# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| RAMON FOX, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No 1:16-cv-00808-JMS-MPB |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

## Entry Denying Petition for Writ of Habeas Corpus

The petition of Ramon Fox for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. IYC 16-01-0275. For the reasons explained in this entry, Mr. Fox's habeas petition must be **denied**.

## A. Overview

Prisoners in Indiana custody may not be deprived of credit time, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

## B. The Disciplinary Proceeding

On January 27, 2016, Investigator P. Prulhiere wrote a Report of Conduct in case IYC 16-01-0275 charging Mr. Fox with violation of state law, I.C. 35-42-2-1.5, aggravated battery. The Conduct Report states:

> As a result of an investigation completed on January 15, 2016, there is sufficient evidence to charge Offender Fox with a violation of State Law IC 35-42-2-1.5 (1) aggravated battery, a level 3 felony.

[Dkt. 13-1].

The Investigation Report states:

> On December 18, 2015 at approximately 5:50 am (Ref: incident report filed with same date), Officer R. Thomas was advised by an offender in Housing Unit South F Unit that an offender was injured and needed medical care. This offender's condition indicated that he had been assaulted. From this point on, this offender will be referred to as the victim. The victim had injuries to his eyes, face, torso and arms that were bleeding and bruised. The victim also had wounds consistent with having been stabbed with a spike type weapon. Supervisory staff attempted to question the victim about his condition, but due to incoherent behavior and speech, no accurate information was obtained. The victim was evaluated by Plainfield Correctional Facility medical staff and it was determined that the victim needed to be taken to an Emergency Room for treatment.
>
> Upon discovery of the victim's condition, Housing Unit South was placed on Lockdown status. Investigator Feldkamp and Lieutenant Kent began a systemic process of interviewing Offenders assigned to Housing Unit South Dorm, F Unit. Leads were gradually acquired to aid in the process of reviewing closed circuit surveillance video. Information received from unit interviews provided a possible location and time of the victim's assault, between 7:00 pm and 8:00 pm on December 17, 2015 near or at bed location F4-8L or F4-9L. I, Investigator Prulhiere, began a systematic process of reviewing the unit video and did find activity occurring near the location that was provided. After observing this activity (the activity did appear to be an active assault), I attempted to locate the victim on unit video. At approximately 6:54 pm, I observed the victim near his assigned bunk moving in a normal manner. I observed the victim walk to the row of bunks into the aisle between rows F3 and F4 stopping between beds F4-10 and F4-11. At approximately 7:01 pm, the victim walked to the space between F4-8/F4-9 and sat down. The victim remained there until the observed time of the assault which was found to be approximately 7:33 pm. At approximately 7:06 pm, Housing Unit South began their recreation movement to the facility gym. During this time, it was found

in the review of surveillance video, that four offenders from Housing Unit South G Unit evaded security and entered into Housing Unit South F Unit. Three identified suspects and Offender Ramon Fox 932844 entered F unit and blended into the unit with other offenders. (All of the suspects and victim are named in case number 16-IYC-0007. A key for the names is included separately in the case file). As time approached 7:30 pm, these four (4) offenders began to assume what appeared to be preplanned positions in proximity to the victim. Suspect 4, from the middle camera's perspective went to a position that was just to the left of the bed area/latrine hallway entrance door and waited. Suspect 1 went to the victim's current located standing at the opening between beds F4-8 and F4-9 directly in front of the victim. Offender Fox, suspect 2, stood directly in the middle camera's view with Suspect 3 speaking to an F Unit Offender. At approximately 7:33 pm, suspect 2 and suspect 3 proceed to the area where the victim was currently located.

Suspect 4, moved in behind Offender Fox, suspect 2 and suspect 3 which placed the three of them with suspect 1 in the area with the victim. Using video surveillance, I observed that Offender Fox, suspect 2, was the first aggressor to move in and attack the victim. From approximately 7:33pm consistently through 7:39 pm the assault barrage from these four offenders was made on the victim. The assault was contained to the space between F4-8L and F4-9L, included F4-9L and merged into the space between F4-9L and F4-10L.

Interviews were conducted with all four suspects and the victim. These interviews yielded confirmation that all of the suspects identified on unit video were active participants in the incident. All of these suspects struck the victim with closed fists, kicked or held the victim while the others struck or kicked the victim. Upon a more clear review of the video, using this information, at approximately 7:38:40 I observed Suspect 4, begin a highly active kicking barrage on the victim that continued for approximately 30 seconds. As a result of this investigation, there is sufficient evidence to charge Offender Fox with a violation of State Law IC35-42-2-1.5(1) Aggravated Battery, a level 3 felony.

[Dkt. 13-2, at pp. 1-2].

On January 31, 2016, Mr. Fox was notified of the charge and was given a copy of the Conduct Report and the Notice of Disciplinary Hearing "Screening Report." He was notified of his rights and pled not guilty. He requested the victim be called as a witness. He also requested the video of the assault. He alleges it would show he was only in the vicinity of the area where the assault occurred. [Dkt. 13-3].

> The hearing officer reviewed the requested video and wrote a summary that stated,
>
> > On the date of 2/6/2016 at approximately 2:00pm. I, DHO L. Glenn did review video of an incident that took place on 12/17/2015 at approximately 7:30 pm that involved offender Fox, Ramon #932844. The video was viewed in confidentiality in the I.I. Office as part of I.I. case file 16-IYC-0007. The video that was viewed is consistent with the Report of Investigation of Incident that is attached to the Report of Conduct for Case Number IYC 16-01-0275 and I am able to positively identify offender Fox, Ramon #932844 during the video review.

[Dkt. 13-4]. The hearing officer conducted a disciplinary hearing in IYC 16-01-0275 on February 20, 2016. Mr. Fox's comment was "I know I didn't assault him, I didn't see in the write-up that they clearly observed me assault anyone. I went down there to talk to someone. I think this is pure circumstantial speculation." [Dkt. 13-5]. The hearing officer found Mr. Fox guilty of a violation of federal/state/local law. He considered all evidence including the offender's statement, the IA casefile, and the video. The hearing officer recommended the following sanctions that were approved: a transfer to a more secure facility; 360 days of disciplinary segregation; restitution in the amount of $9,611.72; 360 days of earned credit time deprivation; a demotion from credit class 2 to credit class 3; and the imposition of a suspended sentence in IYC 15-12-0128 of a demotion from credit class 1 to credit class 2. [Dkt. 13-5].

Mr. Fox appealed the disciplinary proceeding through the administrative process. The Final Reviewing Authority modified the charges from a violation of state law to a violation of Code A-102, with the same sanctions. [Dkt. 13-6]. He now seeks relief pursuant to 28 U.S.C. § 2254 arguing that his due process rights were violated.

### C. Analysis

Mr. Fox is not entitled to habeas relief because he was afforded due process. He raises three issues in his petition: 1) he was denied the right to a fair hearing; 2) he was denied the right to present documentary evidence; and, 3) he received an inadequate postponement.

First, Mr. Fox argues he was denied the right to a fair hearing because the Internal Affairs Officer and the Hearing Officer provided false facts. He bases this argument on alleged discrepancies in the evidence such as the video review, the investigation report, and the conduct report. This argument is interpreted by the Court as a challenge to the sufficiency of the evidence.

In reviewing the sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999); *see also Meeks v. McBride,* 81 F.3d 717, 720 (7th Cir. 1996) ("because the 'some evidence' standard . . . does not permit courts to consider the relative weight of the evidence presented to the disciplinary board, it is '[g]enerally immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority relied' in support of its conclusion") (quoting *Viens v. Daniels,* 871 F.2d 1328, 1335 (7th Cir. 1989)). Instead, the "some evidence" standard of *Hill* is lenient, "requiring only that the decision not be arbitrary or without support in the record." *McPherson,* 188 F.3d at 786.

Here, Mr. Fox was found guilty of battery causing serious injury. The evidence in this action shows that Mr. Fox was implicated by another individual also involved in the assault. This individual confirms in an interview, that is part of the IA case file relied on by the hearing officer, that Mr. Fox spearheaded and coordinated the attack as payment for a debt. The victim had injuries to his eyes, face, torso and arms. The victim also had wounds consistent with having been stabbed with a spike type weapon. This is some evidence to support a guilty finding.

Second, Mr. Fox argues he was denied the right to present documentary evidence – the video summary. The Court interprets this argument as a challenge to the brevity of the video

summary. Although the video summary was brief, the report of investigation of incident, attached to the conduct report of which Mr. Fox was provided a copy, described in detail the investigation of the incident as well as the evidence used to charge and find Mr. Fox guilty of the charge of battery. Mr. Fox was provided this evidence, and was not denied an opportunity to present evidence as he claims. Moreover, the Court reviewed the video evidence and determined that it is neither exculpatory nor inculpatory. In fact, the Court was unable to see an assault on the video submitted by the respondent.[1] Because there is no evidence of an assault on the video, the video cannot be characterized as exculpatory. Mr. Fox was entitled only to exculpatory evidence, and therefore the brief nature of the video summary did not constitute a due process violation. *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2001).

Mr. Fox also argued the reference to an unknown offender in the investigation report was a violation of due process. However, there is no reference to an unknown offender in the conduct report, report of investigation of incident, or video summary. And in the evidence provided to the Court, all of the suspects involved in the attack are identified by name. As such there was no due process violation in this respect and Mr. Fox is not entitled to habeas relief.

Finally, Mr. Fox argues the postponement of his hearing was inadequate and refers the Court to pages 3 and 4 of the disciplinary appeal. Mr. Fox's argument in the disciplinary appeal appears below:

---

[1] Because the Court did not see an assault on the video evidence or on the still shots of the assault submitted by the respondent, [dkts. 15, 24], the Court did not rely on the video in evaluating Mr. Fox's sufficiency of the evidence claim. Rather, as discussed in Section C above, the only evidence the Court considered was the interview with the individual involved in the assault that implicated Mr. Fox.

> J.J. THis WriTer has yeT To be ArrAigned on Any outside
> chArges/prosecuTion, THerefore, outside level 3 is not FeAsAble &
> InT. R.F.          (3)   

Case 1:16-cv-00808-JMS-MPB   Document 13-6   Filed 08/31/16   Page 4 of 4 Pag

> hAs not been posTponed per pAge 33.(3)(d.) of THe A.D.P
> put in plAce For THe purpose of THe Feasibility of guilt
> For THe alleged code ViolAtion, THerefore 100A is not
> Accurate & should be VAcGted.

The Court interprets this argument as one challenging the time frame between the issuance of the screening report and the disciplinary hearing. Due process is satisfied with the issuance of advance written notice of the charge. Mr. Fox received the screening report on January 31, 2016, the disciplinary hearing was held on February 20, 2016. Mr. Fox received advance written notice of the charge. There was no due process violation in this regard and Mr. Fox is not entitled to habeas relief.

### D.     Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge,

disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Fox to the relief he seeks. Accordingly, Mr. Fox's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/19/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

RAMON FOX
932844
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Marjorie H. Lawyer-Smith
INDIANA ATTORNEY GENERAL
marjorie.lawyer-smith@atg.in.gov